**BLANTON v. GREAT ATLANTIC & PACIFIC TEA CO.**

No. 6726.

Circuit Court of Appeals, Fifth Circuit.
Oct. 26, 1932.

428

G. Seals Aiken, of Atlanta, Ga., for appellant.

W. Colquitt Carter, of Atlanta, Ga., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

Blanton sued the Great Atlantic & Pacific Tea Company for damages, alleging an injury negligently inflicted on his ankle by the falling on it of one of a number of boxes piled on the edge of the sidewalk in front of the company's store on Broad street, in Atlanta. The jury found against him, and he appeals. He testified that on July 30, 1930, between 6:30 and 7 p. m., in broad daylight, as he approached the store, walking along the crowded sidewalk, he saw one or two of the men working in the store bring out some boxes and throw them up on the stack three or four feet high, and as he passed one fell down against his ankle without his touching it. An infected wound resulted, and on August 2d he went to the hospital and had his leg dressed and was put to bed for twenty-one days and then went on crutches unable to work for more than two months. He was partially disabled for more than a year, losing his average earnings of $25 per week. He made no complaint to the company at the time, nor until in September. Other witnesses testified to his having a bad leg. The company's sales manager, Newell, testified that the first complaint was made in October,

Blanton then stating not that a box fell on him, but that he had struck his leg against the projecting corner of a box; that after investigation he could learn nothing of the occurrence and so reported to Blanton; that the company frequently put its garbage and trash in covered boxes out on the sidewalk between 5:30 and 8 p. m., as required by the city, but that so far as he knew Blanton might have gotten hurt anywhere else. Another witness, Cates, produced a sick benefit claim signed by Blanton on August 11, 1930, in which Blanton claimed he was first taken sick on August 9th, at 4 p. m., the sickness referred to being the accident to his ankle; and Cates testified that Blanton told him the injury was done by hitting his foot against a box in front of a store at Faith's Crossing at the Georgia Railroad & Power Company's tracks. Blanton testified in reply that the date of the sick benefit claim had been altered from August 1st, and that he had not stated that he hit his foot against a box or that it occurred at Faith's Crossing. A female witness to whom Cates owed rent testified that the character of Cates was bad, and she would not believe him on oath. Blanton introduced a section of the city code which forbids placing any trash, lumber, or other obstructions on any public street or sidewalk. The company introduced another section which, within a district which includes the company's store, authorized the placing of garbage, ashes, and other trash in cans and covered boxes on the margin of the sidewalk between 5:30 and 8 p. m., for removal by the city. No general motion to direct the verdict was made by plaintiff, so we are not called upon to consider the sufficiency of the evidence to support the verdict for the defendant. It is, however, plain that, while the evidence showed substantial damages if the defendant was liable, the jury might justifiably have concluded either that the plaintiff did not receive his injury at the place and in the manner he claims, or that, if he did, there was no sufficient proof that the persons placing the boxes did so wrongfully or were acting under the authority of the defendant. If the jury believed the contradictory statements attributed to Blanton to be established, they might have rejected his testimony as impeached, or have treated his statements as admissions that the injury occurred elsewhere or was due to his own want of care in striking the box. Or if the jury believed the occurrence was as testified by Blanton, since he said the box which fell had been there but a moment, there would have been no responsibility on the owner of

the premises unless the persons so placing it acted for and with the authority of the owner. Blanton did not identify these persons, nor distinctly prove that they were employed by the company. His evidence fairly means only that he saw men bring boxes out of the store and place them on the sidewalk; but whose boxes they were, what they contained, or who the men were, or by whom employed, he does not say.

Several assignments of error relate to charges and refusals to charge upon the elements and measure of damages. Since the jury found no liability whatever, it is manifest that any inaccuracy affecting only the amount of damages was harmless.

A peremptory charge was requested, but refused, that under the city code the placing of the boxes by the defendant on the sidewalk, shown by uncontradicted evidence, was negligence per se, and plaintiff was entitled to recover unless he could have prevented injury by the exercise of ordinary care for his own safety. The request asserted that the boxes were placed by the defendant and assumed that they were not trash boxes permitted by the code at that time and place. Both these propositions were in issue, and under the evidence were questions of fact for the jury. The court, in more guarded language and with greater accuracy, charged that the two sections of the city code were to be construed together, and that under them the defendant would have a right to put trash in covered boxes on the edge of the sidewalk between 5:30 and 7 p. m., but, if the boxes were not such, it was negligence both under the city code and under the general law for the defendant to place them on the sidewalk if it did so, and if they constituted a substantial obstruction to the use of the sidewalk. The two sections of the city code, enacted at the same time so far as appears, are to be reconciled upon the principle of statutory construction that the general shall yield to the particular provisions, so that the latter are treated as exceptions to the general rule. The putting of trash and obstructions on the sidewalk is therefore prohibited generally in Atlanta, but permitted between 5:30 and 8 p. m., in a limited area and under the restrictions stated. The request was properly refused, and the charge given was, as respects negligence per se, correct.

Another charge requested and refused was this: "I charge you that if you believe from the evidence that the plaintiff was injured as the result of the falling of a box placed on the sidewalk by the defendant or by one or more of its servants, and if you find from the evidence that the defendant did not explain said occurrence, then you would be authorized to find a verdict for the plaintiff and against the defendant for whatever amount you believe from the evidence the plaintiff was injured and damaged as the result of said occurrence. This theory is known as the doctrine of res ipsa loquitur." The court instead submitted the case upon the usual charges as to negligence, comparative negligence, and failure of the plaintiff to exercise care and diligence to avoid the consequences of existing negligence as those principles are applied in Georgia, with the burden of showing a right to recover on the plaintiff. The doctrine res ipsa loquitur, as relieving an injured plaintiff from the necessity of proving exactly how and why the thing occurred on his showing that the offending instrument was wholly in the control and care of the defendant, that the plaintiff and no one else had meddled with it, and that the occurrence was such as ordinarily would not happen without negligence on the part of the owner and custodian of the instrument, is recognized in Georgia. Chenall v. Palmer Brick Co., 117 Ga. 106, 43 S. E. 443; Id., 119 Ga. 837, 47 S. E. 329. But it is not a rule of law, but only an inference of fact permitted and not required to be made by the jury. At bottom this is but the proof of negligence by circumstantial rather than by direct evidence. In the cited case, Id., 119 Ga. at page 843, 47 S. E. 329, 330, dealing with the proper charge to be given the jury, the court says: "Under our system, where every question of negligence is left for determination by the jury, even in cases where the maxim under consideration is applicable, the judge should not charge the jury that there would be an inference of negligence from a given state of facts, but should instruct them, in clear and unequivocal terms, that negligence must be proven, and it is for them to consider whether the manner of the occurrence and the attending circumstances are of such a character that they would, in their judgment and discretion, be authorized to draw an inference that the occurrence could not have taken place if due diligence * * * had been exercised. And they should also be instructed that, while they are not required by the law to draw any inference of negligence from the matter, still it is within their province to determine whether the circumstances are such that such an inference might be properly drawn." It is ordinarily for the jury and

not for the judge to say: "The thing speaks for itself." The requested charge made the mere falling of a box on a crowded street without reference to any other circumstance proof of negligence, and that as a matter of law. It was properly refused.

The court also declined to charge as to certain expert testimony: "In this case the plaintiff knew he suffered from his left foot, left ankle and left leg after the accident and not before, better than any doctor could, and if you believe his testimony his knowledge would and ought to outweigh the opinion of a whole college of physicians." There is no such rule of law touching expert testimony, but as the judge did charge, its weight is to be left to the opinion of the jury under all the circumstances. The judge of a federal court may express to the jury his opinion of the weight of evidence, always leaving the final decision of the controverted facts to the jury; but he cannot by a request to charge be compelled to do so, even should the request happen to embody his opinion.

Requests sound in themselves were made for charges touching the state of feeling, and touching the impeachment of some of the witnesses, but their substance was sufficiently covered by the charge given on the subject. We find no error in any of the matters assigned, and the judgment is affirmed.