### 47659. EMORY UNIVERSITY v. WILLIAMS.

CLARK, Judge. Emory University brought this appeal involving a slip-and-fall case instituted by Mrs. Elizabeth H. Williams. Visiting her husband, a patient at the

Emory University Hospital, Mrs. Williams patronized the student cafeteria for her evening meal on March 30, 1969. Having had relatives previously hospitalized at this institution she was familiar with these eating facilities being available to others than students and that customers were expected to return their trays to a certain rack after completion of their meals. As she approached the designated location for this purpose the incident occurred which she described as "I was ready to lift it to put it on the rack when I put my left foot onto the floor, it slipped and I fell instantly with the tray in my hands. It was just so fast, you could hardly believe it." (T. 9.) She sustained serious injuries for which the jury awarded her a substantial verdict. This appeal does not attack that verdict but seeks to nullify it by defendant's motion for judgment notwithstanding verdict based upon a motion for directed verdict made at the conclusion of the plaintiff's evidence which had been renewed after defendant's evidence had been presented.

1. Having been schooled to seek cases quatuor pedibus currit, sometimes called "A white horse case" or its modern counterpart,[1] "A green elevator case," we have made a special study of those slip-and-fall decisions by our court involving restaurants. Chronologically, these are *Pilgreen v. Hanson*, 94 Ga. App. 423 (94 SE2d 752); *Wootton v. City of Atlanta*, 101 Ga. App. 779 (115 SE2d 396); *Ward v. Veterans of Foreign Wars*, 109 Ga. App. 563 (136 SE2d 481); *Angel v. Varsity, Inc.*, 113 Ga. App. 507 (148 SE2d 451); *Winters v. Morrison's Cafeteria*, 121 Ga. App. 98 (172 SE2d 878); and *Boatright v. Rich's, Inc.*, 121 Ga. App. 121 (173 SE2d 232). As normally happens, none of these is on all fours with the facts at bar. Any review of the plethora of slip-and-fall cases makes one realize there are innumerable factual situations without duplica-

---

[1]Senior lawyers direct their juniors to find a controlling legal authority that is identical in all respects even to the color of the involved instrumentality.

tion which occur in the course of human events. As our court said in *Rockmart Bank v. Hall,* 114 Ga. App. 284, 286 (151 SE2d 232): "[E]ach case virtually must stand or fall upon its own peculiar facts, and any attempt to draw fine distinctions based on supposed factual differences must almost inevitably fail. In the final analysis, therefore, resort must be had to fundamental principles. . ." Following this wise advice, we take from these six restaurant cases the fundamental legal principles that govern our disposition of such appeals. These may be summarized as follows: (1) "One cannot state a case without alleging, or effect a recovery without proving, that the defect in the floor which caused the plaintiff to slip, if a patent defect, was for some reason *not connected with any negligence on her part* not patent or obvious to such plaintiff." (Emphasis in original.) *Pilgreen v. Hanson,* 95 Ga. App. 423, supra, p. 425. (2) "Before an owner can be held liable for the slippery condition of the floor, produced by the presence of a foreign substance, proof must be shown that he was aware of the substance or would have known of its presence had he exercised reasonable care." *Boatright v. Rich's,* 121 Ga. App. 121 (3), supra. (3) "In the absence of allegations of facts showing actual knowledge on the part of the defendants of the presence of the substance on the floor, or showing facts and circumstances from which it would be inferred that the defendants had knowledge of the presence of the substance on the floor, the defendants would not be charged with negligence in failing to remove a substance placed there by someone else." *Wootton v. City of Atlanta,* 101 Ga. App. 779, 780, supra. (4) Where there are no conditions making the premises unusually dangerous, the law does not require the proprietor to provide a constant patrol. *Angel v. Varsity, Inc.,* 113 Ga. App. 507, supra.

There are of course other general principles applicable to this case. Of these the most important is that plaintiff has the burden to make out a factual case legally suffi-

cient to create a jury issue. The transcript shows this was not done. We quote pertinent portions of plaintiff's testimony: "Q. Was there anything different about your foot when you put it down that time as opposed to when you put it down as you were walking over there? A. There was something that caused it to slip instantly. It had not been on the floor until I put my left foot on the floor. Had I been able to complete that step, I would have had my tray on the rack . . . Q. All right. Now, when you put that foot down and it slipped, in putting the foot down was it any different from the way you put your foot down in getting to that point walking on this same floor? A. In the way I put my foot down? Q. How it felt under your foot? A. It just felt slick, just suddenly and I had just time to realize it was something. It was slick and then I—down. A. Had it felt slick before that as you were walking to that point? A. No, it had not." (T. 9, 10.)

Cross examination developed the following: "Q. Now tell the jury if as you walked from your table to the food rack, and, say, when you got within from beginning, say, from a point ten or twelve feet from the rack, did you see anything on the floor, Mrs. Williams? A. No, I didn't. Q. Nothing in the way of a substance, or foreign substance? A. No. Q. Had there been something on the floor there was nothing to obscure your view of it, was there? A. You could only see as well as you could see, and on a floor of that type you can't unless the light happens to hit a particle or anything just right, you can't tell whether it was there or not. Q. You had seen particles on the floor on previous occasions? A. Yes. Q. You saw no such particles? A. Not as I walked across the floor. Q. On March 30, 1969? A. That's right. Q. And until your left foot slipped, as you say, just as you were a matter of inches from the food tray, that was the first sensation of a slipperiness that you had had that entire evening, is that correct? A. That's correct. Q. Now did you examine your shoe or did anyone examine your shoe

following the accident? A. Not that I know of. Q. To see if something might be on the bottom surface of your shoe? A. No, I couldn't have, and no one else thought of it. Q. You have no idea what it was on the floor? A. No. Q. That made you slip, if anything? A. It was something different and something slippery, because I had walked across the floor with no difficulty." (T. 46-48.)

From the foregoing it will be observed plaintiff did not prove the existence of a foreign substance. She does indicate that there was a different consistency in the floor at that one spot where her left foot came down, but this alleged construction defect would not be sufficient to take her case to the jury. See *Holloman v. Henry Grady Hotel Co.,* 42 Ga. App. 347, 348 (156 SE 275); *Maloof v. Blackmon,* 105 Ga. App. 207 (124 SE2d 441); *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170 (1) (138 SE2d 77). Particularly since she had set forth in Paragraph 5 of her complaint that "The sole and proximate cause of plaintiff slipping was the negligence of the defendant in permitting and allowing food and beverage substances to be, remain and exist on the floor in said cafeteria in a place designated by defendant for use by invitees."

The employees of defendant testified concerning their cleaning routine and the presence of a supervisor to make certain of the immediate removal of spillage. The dining room supervisor stated she had at the time of the fall "examined the floor myself to find water or anything. I found nothing. I even got down there with my hands, found nothing on the floor but the food that was wasted." (T. 116-117.) Although her counsel contends ordinary care imposed a duty upon the restaurateur to place a mat at this tray return location "what the law requires is not warranty of the safety of everybody from everything, but such diligence toward making the store safe as a good businessman is in such matters accustomed to use." *McCrory Stores Corp. v. Ahern,* 65 Ga. App. 334, 340 (15

SE2d 797). The merchant is not an insurer of the safety of his customers. *Tinley v. F. W. Woolworth Co.,* 70 Ga. App. 390, 393 (28 SE2d 322); *Platz v. Kroger Co.,* 110 Ga. App. 16 (137 SE2d 561). See also *Watson v. McCrory Stores, Inc.,* 97 Ga. App. 516 (103 SE2d 648) and *Jones v. West End Theater Co.,* 94 Ga. App. 299 (94 SE2d 135).

Plaintiff also testifed that defendant's employee said "You are the second person that has fallen today." (T. 13.) According to *Ferry v. Collins,* 118 Ga. App. 460 (164 SE2d 235) such a statement does not create an issue of fact. "Even admitting that the defendant made the statement, it would not establish that there was any slippery substance on the floor. At best it would only establish that the defendant had fallen in the same place; however, the cause of her fall would be pure speculation." Id., p. 461. See also *Denmon v. Rich's, Inc.,* 103 Ga. App. 818, 819 (120 SE2d 659), where our court said "Notice of one defect or of one fact is not notice of another wholly unconnected defect or fact even though the two may be similar in nature. [Cits.]"

2. Plaintiff's counsel argues defendant owes a greater duty of care to plaintiff due to two factors: (a) Plaintiff was required to carry her tray to the racks after her meal. This thesis is negated in *Angel v. Varsity, Inc.,* 113 Ga. App. 507, supra. And (b) plaintiff being 62 years old at the date of her fall, her capable counsel contends: "As people age, their co-ordination, eyesight and other faculties tend to diminish, at least, to a limited extent. The proprietor who seeks to attract such persons as customers has a duty to them to provide safe premises . . ." Such contention[2] was rejected in *Houser v. Walter Ballard &c. Co.,* 108 Ga. App. 559, 561 (133 SE2d 924), where an

---

[2]Pablo Picasso is still painting at 90; Leopold Stokowski is still conducting at 90; and Pablo Casals is still playing the cello at 95. Cf. Cicero wrote his immortal De Senectute at the age of 86.

optical company was granted a summary judgment where plaintiff fell because of a nine-inch step-down at the door, she having alleged that the premises "were unsafe and dangerous, especially with respect to elderly people with poor eyesight, sick, infirm, feeble, aged, crippled and partially blind persons, whose presence both defendants should have anticipated in the exercise of ordinary care, said defendants being engaged in businesses concerned with the health and welfare of their invitees."

Although the plaintiff was wearing low-heel loafers, was looking in the direction in which she was walking and had a clear view of the floor from her table to the racks, her "innocence does not necessarily establish the negligence of the defendant." *Cook v. Kroger Baking & Grocery Co.,* 65 Ga. App. 141, 142 (15 SE2d 531) as cited with approval in *Miscally v. Colonial Stores, Inc.,* 68 Ga. App. 729, 732 (23 SE2d 860).

3. Since plaintiff presented no evidence that a substance existed and defendant's evidence is to the contrary; since defendant had neither actual nor constructive notice of the presence of any foreign substance on the floor; since defendant was not negligent and breached no duty of care owed to the plaintiff, the lower court erred in not granting defendant's motion for a directed verdict. For similar holdings on slip-and-fall cases either on general demurrer, nonsuit, summary judgment, or directed verdict, see *Collins v. S. H. Kress Co.,* 114 Ga. App. 159 (150 SE2d 373); *Ferry v. Collins,* 118 Ga. App. 460, supra; *Rogers v. Ranew,* 108 Ga. App. 406 (133 SE2d 410); *Denmon v. Rich's, Inc.,* 103 Ga. App. 818, supra; *Angel v. Varsity, Inc.,* 113 Ga. App. 507, supra; *Winters v. Morrison's Cafeteria,* 121 Ga. App. 98, supra; *Watson v. C. & S. Bank,* 103 Ga. App. 535 (120 SE2d 62); *Home Federal Savings &c. Assn. v. Hulsey,* 106 Ga. App. 171 (126 SE2d 541); *Mitchell Motors v. Tatum,* 120 Ga. App. 689 (172 SE2d 187); *Brown v. J. C. Penney Co.,* 123 Ga. App. 233 (180 SE2d 364).

*Judgment reversed. Eberhardt, P. J., and Deen, J., concur.*

Argued November 8, 1972—Decided January 3, 1973—
Rehearing denied January 26, 1973.

*T. M. Smith, Jr., Hunter S. Allen, Jr.,* for appellant.
*Adair, Goldthwaithe, Sanford & Daniel, T. Emory Daniel,*
for appellee.